Good morning, Monica Knox for Appellant Mr. Pratt, and I'm going to try to save two minutes for rebuttal. I'll watch my own time. This is a crime that made no sense to anybody. The prosecutor's closing argument was, I have no idea what the motive is. The whole thing was irrational, but the defendant is a liar, and this was the result of him being crazed on meth. The defense attorney in this case chose to put on a defense of self-defense that was weak for a number of reasons, in large part because it depended on Mr. Pratt's testimony, and the defense attorney knew that he would be a terrible witness. It was also inconsistent with the forensic evidence because he was shot in the back of the head. But the most important factor here is that he chose that defense without investigating anything else. And had he bothered to investigate, he would have discovered that Mr. Pratt had a very strong defense. Now, it was only a partial defense. Well, also, I mean, he did do some investigation, didn't he? No, he had some information, but it wasn't the result of his investigation. Well, he had information to prepare for the competency hearing, right? He had three reports. Four, but yes, there were four reports altogether. For the competency hearing, there were three, right? All right, there were three that were prepared for competency, yes. Right, so at the time he made the decision to go forward or not go forward, he had the three. I think that's what Judge Graber was getting at, so he knew what was in those reports at a minimum. Yes, yes. And that's an important part, I think, because those reports all hinted at severe problems that Mr. Pratt most likely had, including organic brain damage. Two of the reports specifically recommended further testing. And still, defense counsel did nothing. What's the prejudice? The prejudice is that he had a very strong defense. You're in the third inning. I'm in the bottom of the ninth, to use a baseball analogy. What is the ultimate prejudice? I understand your theory. He could have put on a mental health defense, which may have resulted in a conviction for incomplete self-defense, which would still have been a felony, which still would have made him a three-strike candidate, correct? Yes. I'm right so far? But he would have gotten to, he would have lived long enough to get to eligibility for parole. Is that the prejudice? That's part of the prejudice. Have you computed what the sentence range would have been? Yes. He would have had, he got a sentence of 80 to life. He would have had a sentence of 30 to life if he had been convicted of involuntary or involuntary manslaughter as a third strike. So when would he have been, excuse me, just to finish that thought, forgive me for interrupting, but to finish that thought, so when would he have been eligible for parole? At about 23 years. Thank you. And he was 35 at the time of sentencing. Is that about right? I think that's about right. But he was also prejudiced in two other ways. The defense that the defense counsel put on, the straight self-defense, was totally dependent on Pratt's testimony. The prosecutor argued entirely in his closing, Pratt's a liar. What the mental health evidence indicates is not that he lies about stuff, but because his memory is so impaired and his brain is so damaged that he has virtually no ability to recall traumatic events, and he is subject to suggestion and, more important, to the way the psychologist described it is that the mind can't deal with that kind of chaos, no ability to remember. Counsel, I guess I want to back up one step to ask about the decision to use the self-defense defense. And that is, in your view, the route should have been pursued that might have resulted in eventual parole eligibility in his lifetime, but counsel chose a strategy that, if successful, would have allowed him to walk entirely. So, you know, if self-defense is believed, it's a defense. And so I guess my question is, even though it was a long shot, why isn't that a reasonable balancing of issues? For a number of reasons. First of all, the premise is inaccurate, because Mr. Pratt was also charged with assault. And nobody ever suggested that Renee, the assault was on Renee, that Renee had been attacked in any way or presented any threat to Mr. Pratt at any time. She was sitting in the living room with her baby. And so, and it wasn't a defense to that. And that alone would have been enough to three-strike him. But he was acquitted of that charge. Well, yes, he was. And so if he had been acquitted of the other charge, he would have walked. I guess my point is that as it unfolded, it seems that it, I guess it doesn't seem entirely irrational to me what counsel did. Well, what he did is he picked a very weak defense without investigating whether there was a stronger defense, even if it was only a partial defense. And this Court has dealt with that issue in cases before. Well, I guess I also have difficulty saying no investigation, because the lawyer did acquire, however you want to, whatever verb you want to use, acquired information that did inform the lawyer that there was this defense. And so knowing that, I guess I'm still stuck on why this wasn't a permissible choice on the part of the lawyer under the deferential standard that we have to apply. Well, I would disagree that the information he got from the competency doctors did give him enough information to know what an imperfect self-defense or any other potential defense would have been, because he didn't follow up on their recommendations. He didn't do any of the testing. He didn't know how Pratt would test on all those things and what they meant. I guess my point is, couldn't he assume that the paranoia, the brain damage, the other things that are mentioned in those reports are true and saying to himself, okay, let's suppose I could do that. I still think it's a better option to try to gamble a little bit here and maybe get him off altogether rather than be quarreling between 30 years to life and 80 years to life. Well, first, that is not what Mr. Ross testified to. He did not say that he fully understood or he even partially understood the evidence that would have supported that other defense. In fact, he never even said that given what I know now from all the testing that you've done, I still would have made that same choice. What's your position on the standard of review here? It's de novo. Because the state didn't look at the merits of the claim? Right. And I would note one other thing about, before I reserve the rest of my time, one other thing about prejudice that we didn't get to, which is everything here is turning on this three-strike thing. That's what defense counsel said. Well, this evidence was all evidence that was highly relevant at a Romero hearing to strike a strike. It's one of the factors that the California rules of court and the court decisions specifically say that a court has to consider in deciding whether to exercise its discretion to strike a strike. And so it would have been relevant to that, too, and he was highly prejudiced by not having that kind of motion with that kind of evidence to support it litigated. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Mark Johnson from the California Attorney General's Office, appearing today on behalf of the respondent, the warden. Could I ask you, counsel, before I forget, about your position on the standard of review? That's a good question. And that was the first thing I was going to raise, actually, is when this issue was brought before the California Supreme Court, it was denied as untimely with a citation to Henry Robbins. Now, previously, that had meant that under this circuit's decision that essentially it would be reviewed de novo. However, we've learned subsequently in the Walker v. Martin case in the Supreme Court that the California Henry Robbins bar for untimeliness is, in fact, an independent and adequate state procedural bar that amounts to a procedural default. Do you argue that in district court? No, because at the time it would have been a futile argument to make to the district court in light of its controlling precedent. You know, we do research at this end of things, and it's clear, at least to me, that your office has taken the Roth position long before the Supreme Court said it was adequate. Isn't that correct? On occasion, yeah. So why isn't your argument waived? Because it wasn't raised at the district court. Well, and that brings me to the second point. Answer my question. Is it waived? Say yes or no. Why? Okay, and that brings me to the second point I wanted to make. It appears to me that in light of subsequent decisions in Harrington v. Richter and Cullen v. Penholster, that the presentation of the merits adjudication of a claim presented on federal habeas corpus is a prerequisite for federal habeas corpus review in cases being filed after the advent of the AEDPA. And I think that Richter makes that clear, that it's not merely a procedural waiver thing. It's an essential component for it to receive federal habeas corpus review at all. But wait a minute. I'm not understanding what you're saying. There wasn't a decision on the merits from the state court. That's right. And so you're saying because the state court cited Inouye Robbins procedural grounds, the timeliness grounds, and there wasn't a decision on the merits in the state court, therefore he can't file federal habeas? Well, he can, but there's some significant obstacles he has to overcome first in order to do that. He has to either establish cause of prejudice for his procedural default or he has to establish a miscarriage of justice. But that presumes that we can consider the question of procedural default in the first place. And we regularly hold defendants to waiver of issues in the district court, and we also regularly hold the government to it. You know, if you ñ I mean, the way that normally this is dealt with in briefs is to say we make thus and such argument, we know it's foreclosed by precedent, we think the precedent is wrong, but at least it's raised, and here it wasn't even raised. Well, and I understand what you're saying. And I just want ñ I wanted to set out these two things, procedural things, for your consideration, because in my view Richter and then Penholster has changed the way that we look at habeas review in these cases. And with that, I mean, unless you have more questions on that particular point, I'll submit it for you and welcome you to take a close look at Richter and Penholster. If we review this de novo, what's your strongest argument? My strongest argument is this ñ well, this is one of these cases where it really straddles both prongs of Strickland versus Washington. Counsel's decision was reasonable here. The defendant wasn't prejudiced. And it was reasonable for a number of reasons. As you pointed, as Judge Hawkins pointed out, and to borrow his baseball metaphor, it was reasonable for counsel here to swing for the fences in light of what his client was up against. He was up against, you know, 30 years to life as opposed to 80 years to life. Either one is a functional equivalent of a life sentence. All right. But opposing counsel's point is that the defense counsel was obligated to do at least enough of an investigation to figure out whether it was a reasonable choice to make to not further pursue. And as I read these three reports that he had at the time of the competency hearing, he knew that there was a history of hyperactivity, learning disability and head injuries, treatment and hospitalizations for head injury and mental illness, brain damage or dysfunction, a memory index score in the fifth percentile. It was impossible to rule out schizophrenia and a strong recommendation from two mental health care providers that his hospital records and his previous mental health inpatient treatment records needed to be obtained, and they weren't. So why was that? Why did defense counsel put himself in a position that he could really make an informed choice? Well, he did have that information at his disposal. Right, and he didn't follow up. And he did consider pursuing a defense of imperfect self-defense and ultimately opted against that. Well, he sort of did. He got the jury instruction, but he didn't give the jury any evidence with which to consider it. Yeah, and counsel presented a number of reasons for that choice. And one I just mentioned, he thought that his best service for his client was to seek an outright acquittal. That's one reason. Another reason was that he was very aware of his client's version of the events and what his trial testimony would be, and that would conflict with a finding of diminished actuality or imperfect self-defense. And thirdly, and I really think this was a reasonable choice on counsel's part, he was very reluctant. What my colleague didn't mention was that aside from these mental health problems that you listed from the various reports here, the defenses proffered here would have turned on the defendant's voluntary methamphetamine use at the time of the crime. And that was something that I think counsel very reasonably did not want to present to the jurors, who, as a matter of practicality, would tend to view voluntary methamphetamine use to be used as a legal excuse in a dim light. Yes, but counsel, that's the biggest problem I have with the whole case, with making this decision. Because it seemed to be very clear from the evidentiary hearing that defense counsel did not want to put Mr. Pratt on the stand. He wasn't focused. He was hostile. He had serious memory problems. And he couldn't possibly go forward with the defense of self-defense without putting Mr. Pratt on the stand. In fact, the trial court ruled that there was no evidence in support of this defense. So unless Mr. Pratt was going to testify, he wasn't going to be allowed to argue it to the jury. So he had to put Mr. Pratt on the stand, even though he dreaded doing so. That's correct. But that would have been the case with either of the other proffer defenses, too. You know, Mr. Pratt would have had to testify. And I hate to say this in argument, but as I pointed out in my brief, clients have no power to prevent their or, excuse me, attorneys have no power to prevent their clients from testifying. This isn't a record that tells me that Mr. Pratt was demanding to testify. I don't see that in the record at all, counsel. And so the insistence of going for the all or nothing is really inconsistent with this notion that there was a big problem putting Mr. Pratt on the stand. That's what I'm having, that's what I'm really struggling with. Well, we can second guess what counsel's decisions were, but the question under Strickland, even if this were to be reviewed de novo, is whether it was simply reasonable, a reasonable decision. And Strickland also teaches that once counsel has made a decision to follow a particular defense, his duty to conduct further investigation into alternative and conflicting defenses is at an end. And I think that's exactly what happened in this case. And if there's no further questions, I'll submit the matter. Thank you, Your Honors. Thank you. Ms. Knox, you have some rebuttal time remaining. I'd just like to make one point, which is that Mr. Ross chose when he didn't even have to choose. He chose without investigation, but the choice wasn't even necessary. There are numerous cases, and they're cited in my brief, where this Court and California courts have either noted or upheld the defense of both perfect self-defense and imperfect self-defense. All he had to argue, if he had had this mental health evidence and could have put it on, not only would it have explained Mr. Pratt's behavior on the stand, but he could have argued to the jury, lookit, he had an actual genuine belief that Tim was going to hurt him. What he did was reasonable under the circumstance, but even if you think it wasn't reasonable, it was genuine, and so at least he gets that. And I would go back to what the Court has pointed out itself. He asked for the instruction. So in the end, although he may not have argued it, he really didn't choose anyway, because he put it before the jury without giving them anything to hang their hat on on that. Or because he doesn't put on the evidence that explains Pratt's demeanor, he gives them no reason to even want to look for anything else. Thank you. Thank you, counsel. We appreciate the arguments that both of you have presented today. The case is submitted.
judges: Hawkins, Graber, Christen